**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOHN THOMPSON,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>DIVERSIFIED HEALTHCARE TRUST, LISA HARRIS JONES, JEFFREY P. SOMERS, DANIEL F. LEPAGE, JOHN L. HARRINGTON, DAVID PIERCE, ADAM D. PORTNOY, and JENNIFER F. FRANCIS,<br><br>　　　　　Defendants. | Case No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff John Thompson ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against Diversified Healthcare Trust ("DHC" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the proposed merger of the Company with Office Properties Income Trust ("OPI"), a real estate investment trust ("REIT") externally managed by the same alternative asset management as DHC, The RMR Group Inc. ("RMR").[1]

---

[1] The proposed business combination described herein is referred to as the "Proposed Transaction."

2.  On April 11, 2023, the Company entered into an Agreement and Plan of Merger with OPI (the "Merger Agreement"). The Merger Agreement provides that DHC and OPI will combine, with DHC stockholders receiving 0.147 newly issued common shares of OPI for each DHC common share.[2]

3.  The Company's corporate directors subsequently authorized the July 21, 2023, filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Company stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.  It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights, among other things.[3]

5.  For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

---

[2] DHC's stockholders will own forty-two percent of the combined company. OPI's current stockholders will own the remaining fifty-eight percent.

[3] The Special Meeting at which stockholders are asked to approve Proposed Transaction currently is scheduled for August 30, 2023.

**JURISDICTION AND VENUE**

6.  This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7.  Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.  Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. DHC's common stock trades on the Nasdaq Global Select Market, which is headquartered in this District, rendering venue in this District appropriate.

**THE PARTIES**

9.  Plaintiff is, and has been at all times relevant hereto, the owner of DHC common stock.

10. Defendant DHC is a REIT, with its principal executive offices located at Two Newton Place, 255 Washington Street, Suite 300, Newton, Massachusetts 02458. DHC's shares trade on the Nasdaq Global Select Market under the ticker symbol "DHC." DHC is a REIT that owns senior living communities, medical office buildings and wellness centers located throughout the United States. As of March 31, 2023, DHC's approximately $7.1 billion portfolio included three hundred seventy-six properties in thirty-six states and Washington, D.C., occupied by approximately five hundred tenants, and totaling approximately nine million

square feet of life science and medical office properties and more than 27,000 senior living units. DHC is externally managed by RMR, an alternative asset management company. DHC has no employees. Services that would otherwise be provided to DHC by employees are provided by RMR, DHC's manager, and by DHC's managing trustees and officers (each of whom are employees of RMR).

11.     Defendant Lisa Harris Jones ("Harris Jones") is the Company's Lead Independent Trustee and is and has been a trustee of the Company at all times relevant hereto. Defendant Harris Jones also serves as a trustee of Industrial Logistics Properties Trust, a company managed by RMR, and previously served as a director of TravelCenters of America Inc., a former affiliate of RMR. Defendant Harris Jones was also the Chairperson of DHC's Special Committee during the process that led to the Proposed Transaction.

12.     Defendant Jeffrey P. Somers ("Somers") is and has been a trustee of the Company at all times relevant hereto. Defendant Somers also serves as a trustee of OPI and Seven Hills Realty Trust, a company managed by RMR.

13.     Defendant Daniel F. LePage ("LePage") is and has been a trustee of the Company at all times relevant hereto. Defendant LePage was also a member of DHC's Special Committee during the process that led to the Proposed Transaction.

14.     Defendant John L. Harrington ("Harrington") is and has been a trustee of the Company at all times relevant hereto. Defendant Harrington also serves as a trustee of OPI and Service Properties Trust, a company managed by RMR.

15.     Defendant David Pierce is and has been a trustee of the Company at all times relevant hereto. Defendant Pierce was also a member of DHC's Special Committee during the process that led to the Proposed Transaction.

4

16.     Defendant Adam D. Portnoy ("Portnoy") is and has been a Managing Trustee of the Company and Chair of the Board at all times relevant hereto. Defendant Portnoy is also President and Chief Executive Officer of RMR, which manages OPI, a Managing Trustee of OPI and Chair of the OPI board of trustees. In addition to DHC and OPI, defendant Portnoy is a managing trustee/director and chair of the board of all RMR managed companies.

17.     Defendant Jennifer F. Francis ("Francis") has been Managing Trustee, President and Chief Executive Officer of the Company at all times relevant hereto. Defendant Francis is also Executive President of RMR.

18.     Defendants identified in paragraphs 11-17 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

19.     On April 11, 2023, the Company announced in relevant part:

NEWTON, Mass. -- (BUSINESS WIRE) -- Diversified Healthcare Trust (Nasdaq: DHC) today announced that it has entered into a definitive merger agreement with Office Properties Income Trust (Nasdaq: OPI), pursuant to which OPI will acquire all of the outstanding common shares of DHC in an all-share transaction. The transaction was unanimously recommended by special committees of the respective Board of Trustees of OPI and DHC, comprised of independent, disinterested trustees, and unanimously approved by the respective Board of Trustees. OPI will be the surviving entity in the merger and intends to change its name to "Diversified Properties Trust" upon closing of the transaction and is expected to trade on The Nasdaq Stock Market LLC.

Pursuant to the terms of the merger agreement, DHC shareholders will receive 0.147 shares of OPI for each common share of DHC based on a fixed exchange ratio, which represents an implied value of $1.70 per DHC common share and a 20% premium to the average closing price of DHC common shares for the 30 trading days ended on April 10, 2023, resulting in DHC shareholders owning approximately 42% of the combined company, and OPI shareholders owning approximately 58% of the combined company.

Upon the closing of the transaction, DHC shareholders will benefit from the combined company's expected cash distribution of $0.25 per share per quarter, or $1.00 per year, which is a 267% increase on a pro rata basis from DHC's current distribution level of $0.01 per share per quarter, or $0.04 per year. The merger is expected to be immediately accretive to DHC shareholders on a pro rata basis and is expected to result in annual general and administrative savings of approximately $2 million to $3 million.

Jennifer Francis, DHC's President and Chief Executive Officer made the following statement:

"The merger with OPI greatly benefits DHC both strategically and financially. Strategically, the combined company will be in immediate compliance with debt covenants, have immediate access to multiple capital sources through its greater scale and diversity to address upcoming debt maturities and increase liquidity to continue funding the ongoing SHOP recovery and capital improvement plan. Financially, the transaction immediately reduces DHC's leverage and is immediately accretive to DHC's normalized funds from operations and cash available for distribution, and the expected pro rata annual distribution represents a 267% immediate increase for DHC shareholders."

The combined company will be led by the OPI executive management team, will be managed by The RMR Group (Nasdaq: RMR) and will be headquartered in Newton, MA. The transaction is subject to the approval of DHC and OPI shareholders and other customary closing conditions and is expected to close during the third quarter of 2023. RMR has agreed to waive the contractual termination fees associated with the DHC business management agreement and property management agreement specific to the OPI acquisition.

**Advisors**

BofA Securities is acting as exclusive financial advisor and Sullivan & Cromwell LLP is acting as legal advisor to the special committee of DHC's Board of Trustees in this transaction.

**The Materially Incomplete and Misleading Proxy Statement**

20.    The Board caused to be filed the materially incomplete and misleading Proxy Statement with the SEC on July 21, 2023  The Proxy Statement, which recommends that DHC stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading

information, concerning: (a) the financial forecasts for OPI and DHC; (b) the financial analyses that support the fairness opinion provided by the financial advisor to the special committee of the Board ("Special Committee"), BofA Securities, Inc. ("BofA"); and (c) the background of the Proposed Transaction.

*Material Misrepresentations and/or Omissions Concerning the Financial Forecasts for OPI and DHC*

21. The Proxy Statement fails to disclose material information concerning the financial forecasts for OPI and DHC

22. First, the Proxy Statement fails to disclose the line items underlying OPI's forecasted: (a) NOI; (b) Adjusted EBITDA*re*; (c) Normalized FFO; (d) Cash NOI; and (e) Unlevered Free Cash Flow.

23. The Proxy Statement also fails to disclose the "non-public synergy and cost savings projections [ ] prepared by management of OPI to reflect expected synergies and cost savings that would result from the Merger" (Proxy Statement at 152), to the extent the projections were provided to DHC, the Special Committee, or BofA.

24. Similarly, with respect to the Company's financial projections, the Proxy Statement fails to disclose the line items underlying the calculation of: (a) NOI; (b) Adjusted EBITDA*re*; (c) Normalized FFO; (d) Cash NOI; and (e) Unlevered Free Cash Flow.

25. The Proxy Statement further fails to disclose the previous iterations of DHC's and OPI's financial projections, each of which was provided to the Special Committee and BofA, including, but not limited to: (a) with respect to DHC, (i) the "DHC January 2023 projections" and the revised DHC January 2023 projections and related sensitivity cases and (ii) the "DHC February 2023 projections;" and (b) with respect to OPI, the "OPI January 2023 projections."

26. Additionally, the Proxy Statement fails to disclose the anticipated impact of the Covid-19 pandemic on OPI and is materially misleading in its underscoring of the pandemic's long-term impact on DHC.

27. For example, the Proxy Statement states, "[i]n connection with their ongoing oversight and strategic review . . . during September, October and November 2022, OPI management and DHC management" – in other words, RMR – "considered the financial and operating performance and long-term strategy for OPI and DHC, respectively." Proxy Statement at 85. The Proxy Statement further sets forth that "[w]ith regard to DHC, the focus was on addressing DHC's short term financing or recapitalization needs given [ ] the increased variability in operating cash flows from DHC's SHOP communities and the recovery of that business segment from the Covid-19 pandemic taking longer than previously expected[.]" *Id*. Yet DHC management's own projections assumed "the performance of the SHOP segment would begin to improve in 2023E, return to pre-pandemic levels in 2024E and 2025E and, once stabilized, further improve in performance during 2026E and 2027E in line with senior living industry norms." *Id.* at 155.

28. Comparatively, the Proxy Statement fails to mention the long-term impact of the Covid-19 pandemic on OPI's prospects. The Covid-19 pandemic forced companies to adopt working from home, reimagining the role of offices. Indeed, in OPI's Annual Report on Form10-K for the year ended December 31, 2022, filed with the SEC on February 15, 2023 (the "OPI Annual Report"), OPI warned:

> Changes in space utilization accelerated in response to the COVID-19 pandemic, including increased remote and other alternative work arrangements, continue to impact the market for both private sector and government tenants. It is uncertain to what extent and for how long such remote or other alternative work arrangements may continue. In addition, it is possible that hybrid work

> arrangements could continue or increase, such as workspace sharing or hoteling of office space. To the extent these practices become permanent or further increase, demand for leased space, including at our properties, may decline. **As a result of these factors, our tenant retention levels could decline and we may experience reduced rent or incur increased costs under future new or renewal leases.**

OPI Annual Report at 28 (emphasis added).[4] In fact, in connection with OPI's financial projections, OPI "assumed that OPI tenant retention is approximately 50% for 2023E and that tenant retention will also be depressed in 2024E[.]" Proxy Statement at 151. Yet, while DHC is expected to "return to pre-pandemic levels in 2024E and 2025E and, once stabilized, further improve in performance during 2026E and 2027E in line with senior living industry norms" (*id.* at 155), the Proxy Statement fails to quantify the projected impact of the Covid-19 pandemic and OPI's tenant retention levels for 2024E through 2027E.

*Material Misrepresentations and/or Omissions Concerning BofA's Financial Analyses*

29.     The Proxy Statement fails to disclose material information concerning BofA's financial analyses.

30.     With respect to the *Discounted Cash Flow Analysis* of DHC performed by BofA, the Proxy Statement fails to disclose: (a) the terminal year recurring free cash flows; (b) the Company's terminal values; (c) DHC's net debt as of April 6, 2023 (pro forma for revolving credit facility repayment and gross sales proceeds from three property dispositions subsequent to 2022); and (d) the Company's fully diluted outstanding shares.

31.     With respect to the *Selected Publicly Traded Companies Analysis* and *Selected Precedent Transactions Analysis* of DHC performed by BofA, the Proxy Statement fails to

---

[4] Available at: https://www.sec.gov/ix?doc=/Archives/edgar/data/0001456772/000145677223000012/opi-20221231.htm

disclose: (a) the individual multiples and financial metrics for each of the selected companies and transactions analyzed, respectively; (b) DHC's net debt as of April 6, 2023 (pro forma for revolving credit facility repayment and gross sales proceeds from three property dispositions subsequent to 2022); and (c) the Company's fully diluted outstanding shares.

32. With respect to the *Wall Street Analysts' Price Targets* analysis and *Wall Street Analysts' NAV Estimate* analysis of DHC performed by BofA, the Proxy Statement fails to disclose the individual price targets and estimates of net asset value observed, as well as their respective sources.

33. With respect to the *Discounted Cash Flow Analysis* of OPI performed by BofA, the Proxy Statement fails to disclose: (a) the unlevered, after-tax recurring cash flows for OPI for years 2023 through 2027 taking into account the cost savings; (b) the terminal year recurring free cash flows, with and without taking into account the cost savings; (c) OPI's terminal values; (d) OPI's net debt as of April 6, 2023 (pro forma for gross sales proceeds from five property dispositions subsequent to 2022); and (e) OPI's fully diluted outstanding shares.

34. With respect to the *Selected Publicly Traded Companies Analysis* and *Selected Precedent Transactions Analysis* of OPI performed by BofA, the Proxy Statement fails to disclose: (a) the individual multiples and financial metrics for each of the selected companies and transactions analyzed, respectively; (b) OPI's net debt as of April 6, 2023 (pro forma for gross sales proceeds from five property dispositions subsequent to 2022); and (c) OPI's fully diluted outstanding shares.

35. The Proxy Statement fails to disclose material information concerning the background of the Proposed Transaction.

36. According to the Proxy Statement, in connection with the Proposed Transaction, the Special Committee sought, but failed to secure, RMR's waiver of its ability to earn any business management incentive fee payments under the OPI Current Business Management Agreement, the DHC Current Business Management Agreement or the business management agreement of the combined company in 2023 and 2024. Specifically, at an April 7, 2023, Board meeting, the Special Committee:

> discussed its desire to include in the RMR Letter Agreement that RMR would not be eligible to earn a business management incentive fee in respect of the combined company for 2023 or 2024, on the basis that representatives of RMR had informed the DHC special committee that RMR did not expect to earn such a fee in 2023 or 2024 on a stand-alone basis with respect to DHC or OPI, and RMR should not have an opportunity to earn such an incentive fee by virtue of closing the transaction that RMR would not have earned with respect to DHC or OPI on a stand-alone basis.

*Id.* at 108.

37. On April 8, 2023, representatives of RMR, including defendant Portnoy, rejected the waiver. That same day, BofA, at the direction of the Special Committee, requested RMR's most recent incentive fee calculations. According to the Proxy Statement, these incentive fee calculations "demonstrated that, as of March 31, 2023, RMR did not expect to earn a business management incentive fee for either DHC or OPI on a stand-alone basis in 2023[.]" *Id.* at 109. Notably, following its review of the incentive fee calculations, the Special Committee met with RMR on April 10, 2023, to further discuss a waiver of RMR's ability to earn any business management incentive fee under the OPI Current Business Management Agreement, the DHC Current Business Management or the business management agreement of the combined company in 2023 and 2024. *See id.* at 110. Following RMR's continued rejection of the waiver, the Special Committee relented, determining to forego the waiver. The Proxy

11

Statement fails, however, to disclose the business management incentive fees RMR is anticipated to receive from the combined company in 2023 and 2024 – payments RMR would not be entitled to absent the Proposed Transaction.

38. Moreover, the Proposed Transaction was engineered by RMR for RMR's benefit, not the best interests of DHC's stockholders. The Proxy Statement is materially misleading with respect to RMR's and the Board's bases for pursuing the Proposed Transaction.

39. With respect to OPI and DHC management's – i.e., RMR's - review of the performance and long-term strategy for OPI and DHC between September and November 2022, the Proxy Statement states that the "focus was on addressing DHC's short term financing or recapitalization needs" given that, among other things, "DHC was restricted from refinancing existing or maturing debt or issuing new debt because it did not meet the debt incurrence requirements set forth in the DHC Credit Agreement and senior unsecured notes indentures[.]" *Id.* at 85. Yet, the Proxy Statement fails to disclose any alternatives available, and the Board seemingly failed to pursue any opportunities for DHC to regain compliance under the DHC Credit Agreement, other than the Proposed Transaction. Notably, numerous DHC stockholders have voiced their opposition to the Proposed Transaction. In a presentation filed with the SEC on July 14, 2023, D.E. Shaw & Co., L.P. cites numerous "better alternatives" for DHC to address its near-term maturities, including waiting to achieve covenant compliance, soliciting consent from bondholders, selling assets to repay debt, issuing preferred stock to repay debt, issuing a zero-coupon bond to repay debt, or raising new debt at a newly created joint venture.

*See* Notice of Exempt Solicitation, July 14, 2023, "The D.E. Shaw Group's Perspectives on the Proposed DHC-OPI Merger," at 38-46.[5]

40. Moreover, the Company's portrayal of the Special Committee's independence is materially misleading. For example, the Proxy Statement repeatedly states the Special Committee "is comprised solely of independent and disinterested trustees." Proxy Statement at 129; *see also id.* at 159 ("The Merger Agreement, the Merger and the other Transactions and the terms and conditions thereof were evaluated, negotiated and recommended to the DHC board of trustees by the DHC special committee, which is comprised solely of DHC's independent and disinterested trustees"). Yet, the Proxy Statement concedes the Chairperson of the Special Committee, defendant Lisa Harris, has longstanding ties to RMR. *See id.* at 18 ("Certain trustees of OPI and DHC serve as trustees or have served as trustees and/or directors of other companies managed by RMR. . . . Lisa Harris Jones, an independent trustee of DHC, serves as a trustee of Industrial Logistics Properties Trust, and served as a director of TravelCenters of America Inc.").

41. The omission of the above-referenced information renders statements in the "Unaudited Prospective Financial Information of OPI" "Unaudited Prospective Financial Information of DHC," "Opinion of the Financial Advisor to the DHC Special Committee" and "Background of the Merger" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.

42. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of the Company will be unable to make a sufficiently

---

[5] Available at: https://www.sec.gov/Archives/edgar/data/1075415/000090266423003958/p23-1992px14a6g.htm

informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and DHC**

43. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

44. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. DHC is liable as the issuer of these statements.

45. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

46. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

47. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

48. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

49. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

50. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

51. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

52. The Individual Defendants acted as controlling persons of DHC within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of DHC and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

53. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

54. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

55. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of the Company, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Company stockholders;

B. In the event defendants consummate the Proposed Transaction,

rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

      C.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act;

      D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

      E.      Granting such other relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: July 21, 2023

**ACOCELLI LAW, PLLC**

By: */s/ Richard A. Acocelli*

Richard A. Acocelli
33 Flying Point Road, Suite 131
Southampton, NY 11968
Telephone: (631) 204-6187
Email: racocelli@acocellilaw.com

*Attorneys for Plaintiff*

OF COUNSEL:

**LONG LAW, LLC**
Brian D. Long
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@LongLawDE.com